May it please the court. My name is Mark Fine. I represent appellant Angel Rivera and I'm here on behalf of five other appellants in this case. In the face of a multi- count RICO conspiracy case indictment in which four of the appellants are facing the death penalty, the appellants and a number of other co-defendants agreed to enter into a joint defense agreement. That joint defense agreement occurred both in New Mexico and in Arizona after the case was transferred from New Mexico. The the joint defense agreement was confirmed as complying with the standards of Stepney both in New Mexico and in Arizona. That agreement extended attorney- client protection to certain communications and certain documents that arose in the course of the joint defense. But not among clients without the presence of counsel or at counsel's behest. Your Honor, I would agree with you on the second one, but not the first one. So does it say that it's okay for the clients to get together and talk about the case? Unfortunately, it does not say it's okay anywhere, because this is an area of law that is brand new and there's nothing saying, I would submit to the Court that there's nothing saying that it is not okay either. Okay. But I just wanted to start off with the fact that the agreement doesn't provide. Absolutely. All right. So then if the agreement itself doesn't, what does? Your Honor, it is a question of common law. So the fact that the agreement doesn't specify that these communications are protected is not at issue here. Stepney makes, takes great care to say that it is not up to the agreement to determine what is or is not protected. I agree. I just wanted to be clear that we weren't inferring that the agreement somehow embraced by the Court somehow embraced the communication, because it doesn't. Absolutely not. Okay. And it was not set out to do that. All right. The arena in which we have to evaluate whether these communications are or are not protected by the joint defense privilege is the common law. And unfortunately, there is very little to no guidance on that. The joint defense privilege, while it is a hundred years old, it has not reached this level of proliferation. And so the case law is very new at this point on issues such as this. But I would ask the Court to look at the attorney-client privilege. And the relationship between the joint defense privilege and the attorney-client privilege is clear. In the attorney-client privilege, we do not look for talismanic rules of this, like a list of what is and what is not protected. We look to see whether the elements of the privilege are present in these communications. And that fundamentally is what the appellants are asking the Court to do. So the question becomes whether these communications were exchanged in confidence and whether they were exchanged in furtherance of the joint defense. Well, yes, but you have to have some basis for deciding that. They may have been in confidence. I mean, I assume that the one defendant didn't expect the other one to blab. Right. But that's neither here nor there for purposes of the court. I agree that that's not the central issue. The central issue is whether they were made in furtherance of the joint defense. Okay. And who better to say that than the person who has the burden of establishing it? Agreed. All right? So that didn't happen here. And that's because we do not know what the communications are, Your Honor. But who better than the person asserting the privilege knows when communications occurred at the behest of counsel? Normally, certainly the holder of the privilege. This is a situation that is unusual. This is a joint defense group. And it was spoken, it was the joint defense attorneys gave a directive to the defendants to gather information and to get back with them on that information. This is not, this is, I mean, because these defendants are housed in very strict conditions, access to them is very limited. So in order for us to, I mean, in order for us to get this information, it's not as easy as in a corporate setting when you can call, you know, there's no problem with access to the defendants. Here we had a problem with access, and it was determined as part of the joint defense strategy that we were going to need to gather information and that the only way that we could gather this information was to have them exchange it and get back, and get back with us as to the, the. Well, yes, and if you had asked them to, if you had asked Defendant A to talk with Defendant B and report back, or to, for Defendant A to talk with X and to report back to you, you would know that you ask him to do that, and then you would know that he reported back with respect to a particular subject matter. That is, you would have a log of it, and you could come into the court and say, your court is what happened. So this communication is privileged. Your Honor, I agree with you that that certainly would have been a better and a more orderly way of conducting this. However, we did give a directive very similar to that, and I think the fact that we didn't keep a log of it and we didn't keep tables of it would be a fine line to draw between, between privileged and nonprivileged in a death penalty case. But otherwise, it's just simply reading out for the purpose of seeking legal advice. You're simply then using a joint defense agreement as an umbrella to protect unprotected conversations between either co-defendants or a co-defendant and some other party. Your Honor, we, the district court, if this is done how we believe it needs to be done, will have the opportunity to meet out what we actually, what, what, what was actually exchanged pursuant to the joint defense agreement and the joint defense privilege. So the essence of our appeal is that, that has to be done in an orderly fashion. And it's true, we should have kept a log probably of all the communications that were made and, and that came back to us. But I do not believe that that. You really didn't have to keep a log. Actually, the question, I guess, is whether there was any involvement of the attorney in asking for, for that, that attorney's defendant to make contact and get information. And your Honor, there was. The, the, I think probably. Well, what, is there evidence of that? That. Yes, your Honor. About somebody talking about it? You don't have to have a log, you can have testimony. Your Honor, the, the evidence that was presented to the lower court was that the defendants had met with all, all counsel and all defendants, members of the joint defense agreement met. And, and as part of that joint defense, the attorneys told the defendants that we need you guys to talk. We need you guys to talk. We're not getting the information we need. We need more information. You guys are our best investigators. And I think that that's a useful way of thinking this, because there's plenty of cases in the joint defense context, context where we say, well, a, a communication between a defendant and a co-defendant's investigator is, is protected. A, a communication between a co-defendant and an accountant is, is protected. And between the co-defendant, obviously, the co-defendant's attorney. There, there's a, there's a, an agency, essentially, argument. And, and that seems to be a pattern to which these fall. That, that when, when the communication is made to the other party as part, as an agent of the co-defendant's attorney, then we're going to go ahead and say that's protected by the joint defense privilege. We would know, because the accountant reports back to you the results of his interview with somebody else. The investigator reports back the contents of his interview with somebody else. So you would know that if it had happened, and you could say so. I agree, I agree that, that there is an account, especially in a situation when, when everybody is out of custody. But we don't have, I mean, we, we, we had, I believe it was at that time, eight defendants in the room. We have very limited access to them. They are under very strict confinement. So it's not as simple, unfortunately, as us saying, meet with the accountant and then, and then get back to me. We just didn't have that kind of access. But more importantly. You don't have, you don't have cell phones? We do, Your Honor, but, we do. There's cell phones everywhere, trust me. But, but the, I think the fundamental question that I would ask the court to look at is, is that, is that, I mean, if that is neglectful, is that, is that neglect a basis for saying that these, that the privilege is waived? Because that's essentially what the court would have to do. That, to say that because, because these were not recorded, because these were not logged, the privilege is waived. We, we, we don't believe that there can possibly be a privilege waived. The final log, let's just say evidence, as Judge Hugg puts it, whatever. I, I think logs, because I think that's the way defense privileges are maintained. Your Honor, the other aspect to that is that we, and this is briefed, but, but we are not in a position that, that we are, both because of the limits of memory. I mean, this is, this is also, in addition to the fact that this is in confinement, this is also over a 7- to 12-month period that, that we're talking about. We do not know what, we do not know what the cooperator has remembered. And, and we're not in a position to disgorge any and all information that we have on communications that were made. But you don't have to disgorge the subject, the, the content. But, I mean, goodness gracious, we must have all participated in a million privilege cases where a record is kept of communication and the subject matter of it, not the content. And, and you look at it and you say, you know, my, my accountant went and talked with another, a co-defendant or a third party on X date and reported back to me the subject of my request. That's a work product, and it's okay. You don't go beyond that. So all, that's all that you have to show, and, and it wasn't shown. Your Honor, we weren't given an appropriate venue in which to show that. And, and, and we can't know, we cannot know what, what those communications are that are remembered. For example, if, assume, assume, for example, that, that there was a, that we, that we endeavored to do that and that we, we, we forgot a communication or we didn't have, we didn't, we, we didn't have a log of that communication, would, would that, would that, and, and this is, I think, what the question, the Court is asking, would that constitute a waiver of that privilege claim? And I don't think it can. You know, this is, this is the way for you, you just don't have a privilege. If you don't have a communication that's taken at least at the behest of a lawyer, if not in the lawyer's presence, at least at the behest of a lawyer. And if you're in the process of securing legal advice and obtaining a joint defense, then there's no privilege. But I think that your argument, Your Honor, is that if you don't have a record of it, then there's no privilege. No, no, no. Don't misunderstand me. I'm saying it's the proponent of the privilege's burden to show that a particular communication is privileged. And I don't see anything, whether by way of a log or just a declaration, I don't see anything which shows that any communication took place with the cooperating defendant at the behest of any of the defendant's counsel for the purpose of securing any legal advice on any of their parts. So in the absence of any indication to that effect, what's the basis for any finding of any privilege? Because we know that there is a joint defense agreement, and we know that the defendants told the – I mean, I'm sorry, that the attorneys told the defendants that they needed to go out and they needed to gather this information. So the fact that we don't have – we don't have – that we haven't asserted that there has been these communications on these days should not, in my opinion, be a basis for denying the privilege. Counsel? Yes. I'd like to get back to something a little more fundamental and basic. This is a – before trial, the judge made a evidentiary ruling, correct? No. I would say that the Court made a ruling of law. What kind of a ruling did she make? She made a legal – She made a ruling before trial. That's right, not evidentiary. Why is that appealable? I mean, every time a judge makes a motion before trial, you can appeal it? No, Your Honor. I believe that the – In this case? In this case, the Court has made a ruling and jurisdiction – this Court has jurisdiction based on the collateral order doctrine, the Perlman doctrine. That is not applicable in this case because it would be corrected at the time of trial and on a field. Your Honor – The Perlman rule applies only in the situation in which a party is not a party to the lawsuit. In this case, your client is a party to the lawsuit. The Perlman doctrine applies when the party who has control over the privileged communications or documents – Every time a judge makes a pre-trial ruling, they can come to this Court for – Absolutely not. Absolutely not. In this Court – Well, why is this case different than any other pre-trial ruling? Because this is a privilege issue, and this Court has been real clear in Vickers v. Woodford that in such a circumstance, when the cat is out of the bag, it can't be put back in the bag. And so in privileged situations, when the government is potentially gaining access to – See, all of that – all of that can be raised and adjudicated and litigated backwards and forwards forever at the time of the trial. Your Honor, perhaps it could, but by that time, the government would have the privileged information in its – It has nothing to do – it has nothing to do with the merits of the trial at all. It's an evidentiary ruling whether or not a person – a person can testify to certain facts. Isn't that the case? No. It's purely a question of the scope of the privilege, and we have not been able to assert that privilege. So the question on appeal is whether the Court properly ruled on the scope of privilege. Privilege issues, this Court has been clear, are immediately appealable because, for one thing – once the government gains access to this information, it's lost in that sense. But more importantly, in this case, you have a six-month trial that's about to occur, and so – a six-month death penalty trial. And so if the Court waits until after appeal to address this privilege issue, you have really, really strong and bad repercussions for judicial economy. We would potentially have to retry this case. We would potentially have to remove case agents and substitute counsel. So at this time, it makes sense for the Court to exercise its jurisdiction, which it has both under the Collateral Order Doctrine and the Perelman Doctrine, and ensure that the district court resolves this privilege issue in an orderly way with a full opportunity for us to make a specific privilege claim with regard to specific communications. And do you have any case other than Biddeker on the collateral order thing? Because Biddeker is kind of different. That's right, Your Honor. I mean, it is. Absolutely. And I understand the cat out of the bag rationale, but it's different. And I've been under the impression always that in a – that privilege rulings are not immediately appealable. Normally, they come up in the context of a discovery order, normally, and they're not immediately appealable. Arguably, you've got mandamus available if the Bowman factors are met. But I – what's your bet on that? I would ask the Court to look at a footnote in Biddeker in which it relies on a number of cases from other jurisdictions making very clear that those privileges – but you're right. It arose in a completely different posture. And I will reserve the remainder of my time, please. Steve Yarbrough with the District Judge of Arizona. Good morning. Judge Ferguson, you raised the question of whether this matter is appealable. The government's position is that this Court does not have jurisdiction to hear this appeal. And simply, there's no case of controversy for this Court to hear. The defendants have not come forward and presented a basket of privileges that this Court can look at and determine whether a certain communication is privileged or is not privileged. And furthermore, the defendants have asserted a hypothetical. Collapsing the jurisdictional question with the merits question. I mean, we could – if we had jurisdiction, then we could look at it and say, oh, well, you're correct. Yes, Your Honor. In this case, the two issues are very interrelated, because in order to – in order to have jurisdiction, you obviously have to have a case of controversy. You have to have privileges. Well, why isn't there a case of controversy? The district court said this stuff ain't privileged. And the defendants are saying, sure it is, and we think the district court got it wrong. Why isn't that a pretty live dispute? Well, your question is, is this privileged? There was actually – there's no this that's been presented either to the district court or to this Court. There's never been any communication that's been specified. They've only asserted hypothetical, which they say, if these conditions did arise, then hypothetically a privilege could exist, but unless they – I understand them to be saying that the privilege covers all communications that occurred between all of the defendants because of the joint defense position, posture. That's true, Your Honor. And that's part of the government's position. You want to bust it. They've asserted that. You want to bust it by your cooperating defendant. I just – I guess I'm sorry. I just don't understand why there's not a controversy. I can understand why we might not have jurisdiction, but for that reason I'm having trouble. Okay. What they're asserting is a blanket assertion of privilege, which both this Court and the Supreme Court has said is not enough. And I understand that that issue goes to the merits. Yeah. But what is there for this Court to decide? What's been posited to this Court is essentially a discovery issue. What the defendants want is for the cooperator to be compelled to provide information to the defendants before that cooperator provides that information to the United States. If this Court agreed with the defendants, they, on appeal, they wouldn't be able to send the case back down and say, okay, we find that there actually is a privilege in this communication, because this Court has said that. I mean, we can't just say that the District Court's procedure was wrong and the District Court should have required the government to go first. I mean, that's possible. Yes, Your Honor. You could say that the – you could say that the law is incorrect and that when a defendant asserts a privilege, that by merely asserting that privilege, it becomes the other party's burden to provide whatever. We could do that. We have done crazier things. Yes, Your Honor, that's true. So in that case – What's true? So with respect to that, Your Honor, the Court could find that there was a procedural defect below. But with respect to the determination of a privilege, there's no privilege for this Court to decide on appeal. And that's essentially my point with respect to the jurisdiction. The other point with respect to jurisdiction is that this Court can either choose to grant jurisdiction or not grant jurisdiction. And the United States reminds the Court both of the precedent that this Court has set and the United States Supreme Court that interlocutory appeals, they cause delays. They're inimical to the effective resolution of cases, particularly in criminal cases. In this case, we're in the midst of litigation of a large RICO death penalty case that this issue has now slowed down for nearly a year. And we have not been able to speak to the cooperator for nearly a year now about important information that cooperator wishes to provide with respect to murders and other crimes that were committed. And the United States' position is that that's one of the very reasons why appeals should not be granted on an interlocutory basis in criminal cases, because this matter could be taken up after trial. And it wouldn't be slowing down. The case has happened. It would be a pretty hard thing to unravel, though, after trial on an appeal. I mean, if there has been a conference between the person who's cooperating and the other defense, it would be very hard to determine what the effect of that was. And isn't it better to resolve the issue at this point? Your Honor, I've got two parts to the answer. The first part is that the issue wouldn't be resolved at this point, because all that would happen at this point would be that this Court would send it back down to the district court, and then we would have litigation over the discovery issue that the defendants are raising with this Court that the district court has yet to address. We would be litigating. What if we said there was no privilege? If you said that there was no privilege, and then that would conclusively resolve the answer. Yes, Your Honor, the answer can be decided now in the negative, that is, that there is no privilege, but it can't be definitively decided in the positive at this point that there is a privilege. And that's because the Court has the circumstances of the communications before it now, but it does not have the actual content of the communications themselves before it. So the Court is able to answer the question one way now, but not the other way at this point. The other part to that answer. So what is the government's request, that we resolve this question, or is it the government's position that there is no jurisdiction and we should just therefore refuse to take the case? Is that? Frankly, Your Honor, the best result for the government would be if this Court were to decide that the district court properly ruled on both the facts and the law below and found that no privilege could exist under these circumstances. That would be the best result for the United States. I know, but I wasn't asking you the best result. I was asking what the government's position is on jurisdiction. The government's position is that jurisdiction does not exist, and so this Court should not reach that next question at all. With respect to unraveling this later, Your Honor, you asked about that. In this case, the facts are clear that we aren't talking about legal advice that was provided. What we're talking about is very specific. It's communications that the defendants told the cooperator in jail. Basically, it's confessions of how crimes were committed, details of how various crimes were committed. And that's exactly the type of information that could easily be suppressed if there had to be a retrial in this matter. And in this case, because litigation has been going on for so long, the vast majority of discovery has already been provided. So at the end of the day, if there needed to be a Castigar hearing, it would be very easy to separate out what was provided before speaking to the cooperator from any information the government learned as a result of speaking to the cooperator. So this is not the type of situation where the cat would be let out of the bag and never could be put back in. The facts of these cases are the facts of this case is much different. But nonetheless, if we do reach the merits of this case, Judge Reimer, you were talking to the appellant about issues with respect to the law. And the law in this matter is clear. It's that blanket assertions of privilege are discouraged. And that's exactly what the defendants have done now. They haven't identified any specific communications that have only made a blanket assertion of privilege. And you discussed the common law. The Supreme Court's made clear that privileges are in derogation of this Court's and the legal system's truth-seeking function. And the Supreme Court's admonished lower courts not to expand the scope of privileges beyond their common law roots. And that's exactly the relief that defendants are asking for in this case. What they're asking, if this Court accepted their argument, would result in a wholesale change in law, in both civil and criminal law, with respect to privileges. The defendants are asking this Court to find that it's no longer the proponent of a privilege that has the burden of asserting whatever the privilege communication is, that if, for instance, in a criminal case, anytime there's a cooperator who had been part of a joint defense agreement, it would only be enough that the defense attorneys merely assert that there hypothetically could be a privilege issue, and that now the Jinks Act and other laws, criminal laws constraining discovery, would be circumvented, and that would give an immediate avenue for discovery that wouldn't otherwise exist. And the United States is urging this Court not to make such a wholesale expansion of privilege laws, defendants request. I have some other comments I can make. I think they've all been briefed, however. So unless this Court has additional questions for me. I don't think we have any more questions. Thank you. Thank you, Your Honor. Mr. Ruffine. The government has indicated that the Court can rule that there is no privilege. I would ask the Court to carefully look at the record it has before it in determining and making a determination that there is no privilege. Counsel, if there was a trial in this case and the judge made the same rulings as she made in this pretrial order, and a panel could decide that she made an error, but the harmless error rule applies. See, that's why we don't permit collateral appeals, because if she was an error, we would have to strike the whole thing, and the harmless error rule wouldn't apply during the trial. Do you understand that? Your Honor, my understanding would be that you could see the harmless error rule applies only when there's a trial. I don't – I – perhaps. Okay. You're depriving – well, anyway. I would also like to point out to the Court that we are not saying that all the communications are protected. That once we gave this directive that the defendants talk among themselves, we are not saying that, well, okay, then everything that they said while in custody for seven to 12 months is protected by the joint defense privilege. We are not saying that. We believe that there may be a small percentage of communications that do fall into that category, that were made in confidence and serving the joint defense strategy as directed by the attorneys at that meeting, that may fall into that category. We have acknowledged in our brief that there may be none. I would also like to explain to the Court that the – I'm sorry. Maybe just one second. I'm not sure what you're saying is the basis for the privilege that would be appropriate. Is it all from that one meeting? Is that the only thing we're talking about? That is the only time at which we believe there could be – that could have sprung communications that may be protected by the privilege. And so that would be one thing that we would look for if the government gave us the information that we're seeking would be the times at which these communications were made. For example, if there was a communication that came right after that – I'm sorry, go ahead. No, that's all right. What was it that was said at the meeting that would provide any sort of privilege? The fact that we were operating under a joint defense agreement. Right. And that we told the defendants as attorneys after speaking about the strategy, and there's no doubt it's a questionable strategy as this case is demonstrating, but we told them go and speak amongst yourselves clearly as part of the joint defense agreement. It's not in the evidence either. Didn't you say go get information? That's right. Go, go. Okay. I mean, from each other, certainly. I mean, do you – You didn't even say that. I'm sorry? You didn't even say that. They're in custody. They're only with each other 24 hours a day. They're in a pod all by themselves exclusively. So when we say go and exchange information, we're talking about them there. Was the word exchange information, was that in there? Your Honor, I'm not sure exactly. That isn't what you said before is what I was meaning. Your Honor, it's in the – exactly what was said is in the transcript in the sealed ex parte excerpts of record. And there is a colloquy between us and the court in which it's explained exactly, I mean, to the best of the counsel's memory, what we were asking the defendants to do. So how can we decide it at this stage? You can send it back to the district court with instructions to have the cooperating witness give us information about these communications so that we may then go back and make a privilege log and do what we are obliged to do by the common law, which is make specific claims of communication. You can do that by talking to your own client. Your Honor, 7 to 12 months, these people are together 24 hours a day for 7 to 12 months. All they talk about is this case. They're in custody only with each other. Which is the best argument for not applying the privilege to communications, uncounseled communications between clients. Uncounseled communications, for sure. But our position is that these were counseled communications, albeit indirectly, but we did give them this directive. You wanted to send it back for the court to conduct certain proceedings. That's right. And after she conducts those proceedings, then you've got a right to come back and appeal, collateral appeal again. And then we send them back again with a collateral appeal and the case is never tried. Is that the way to run a courthouse? Certainly with having a case never tried is not a way to run the courthouse. But I don't believe it's either a way to run the courthouse to just defer completely to the cooperator's account of what happened and not give us the opportunity. Although I acknowledge that we certainly could have done a better job of recording these communications ourselves, I just do not believe that's a basis for determining that there's no privilege here. Thank you. Let me ask you just one question. If this Court did not have jurisdiction now and the thing goes to trial, before assuming that the cooperating witness goes through with it and talks to the government and testifies, or is going to testify, at that point you get Jenks material. So you're going to know what he's going to testify to. At that point, yes. At that point. So then can you renew your objection? I'm sure we will. I'm sure we will renew the objection. But, again, I think that that's too late. When you're dealing with sensitive privilege issues in a death penalty case, it's already gone to the government. The government can benefit from investigation based on those. If it is privileged, can't be. It's of no use to them. It could be of many uses to them based on the investigation that they perform given this information. Even if it's privileged, no fruits are available. It's the whole point of a Castigar hearing, isn't it? I think that a Castigar hearing would be likely. Yeah. Yeah. Okay. Thanks. Anything else? No. Appreciate the argument from both of you. And the matter just argued will be submitted.
judges: Hug, Ferguson, Rymer